# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KENNETH SMITH,

                Petitioner,           :     Case No. 1:12-cv-196

     - vs -                           District Judge Thomas M. Rose
                                        Magistrate Judge Michael R. Merz

FRANCISCO PINEDA, Warden,
 Franklin Medical Center

                                     :
               Respondent.

# MEMORANDUM OPINION AND TRANSFER ORDER

This capital habeas corpus case is before the Court on Petitioner's Renewed Motion for Leave to File a Second Amended and Supplemental Petition for Writ of Habeas Corpus (ECF No. 100). The Warden opposes the Motion and moves instead for transfer of this case to the Sixth Circuit Court of Appeals as a second-or-successive habeas application (ECF No. 101). Petitioner has filed a Reply in support (ECF No. 102).

In his Renewed Motion, Petitioner purports to

> fully incorporate[] his Renewed Motion for Leave to Amend (ECF No. 65), his Reply in Support of that motion (ECF No. 67), his first Supplemental Brief (ECF No. 75), his Second Supplemental Brief (ECF No. 80), and the arguments asserted in his reply memorandum (ECF No. 83) that was subsequently struck for being filed without leave.

(ECF No. 100 at PageID 2359-60). Nothing in the Local Rules of this Court or the Federal Rules of Civil Procedure authorizes a party to compel this Court to review again hundreds of pages of dense argument made earlier in the case in different litigation contexts and the Court refuses to

1

do so.

**Procedural History**

Petitioner Kenneth Smith was convicted of the May 12, 1995, murders of Lewis and Ruth Ray and sentenced to death.  His conviction was affirmed on direct appeal.  *State v. Smith,* 80 Ohio St.3d 89 (1997).  He first petitioned this Court for a writ of habeas corpus on October 14, 1999.  *Smith v. Mitchell*, Case No. 1:99-cv-832.  Final judgment dismissing that first petition with prejudice was entered August 15, 2005.  This Court's judgment was then affirmed.  *Smith v. Mitchell*, 567 F. 3d 246 (6th Cir. 2009), *cert den.*, 558 U.S. 1052 (2009).

Smith filed the instant case, his second-in-time habeas application, on March 9, 2012 (ECF No. 2).  The Petition contains three grounds for relief, all attacking Ohio's lethal injection protocol.  Recognizing that this second-in-time Petition might be second-or-successive, the Magistrate Judge transferred the case to the Sixth Circuit so that that court might decide the second-or-successive question and then decide if it would grant permission for Smith to proceed.  Without questioning the authority of a Magistrate Judge to enter a transfer order, the circuit court held that district courts must decide the second-or-successive question in the first instance.  *In re: Kenneth Smith*, 690 F.3d 809 (6th Cir. 2012), see also *In re Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012).

On remand the Magistrate Judge recommended finding the Petition was not second-or-successive based on his understanding of *Adams I* (See infra at page 4)(Report and Recommendations, ECF No. 11, adopted ECF No. 20).  On June 15, 2015, Smith filed an Amended Petition, this time pleading eleven grounds for relief, all directed at Ohio's lethal

injection protocol (ECF No. 50).  On September 4, 2015, Petitioner moved to amend again (ECF No. 60).  On April 27, 2016, the motion to amend was denied without prejudice to its renewal within thirty days of the mandate in *Adams v. Bradshaw*, a habeas corpus case from the Northern District of Ohio then pending on appeal to the Sixth Circuit.  It was hoped that the circuit court decision in that case would clarify circuit precedent on the filing of lethal injection claims in habeas in light of *Glossip v. Gross,* 135 S.Ct. 2726 (2015).  The instant motion was filed pursuant to that schedule.

## ANALYSIS

Kenneth Smith is a plaintiff in *In re:  Ohio Execution Protocol Litig*., Case No. 2:11-cv-1016.  It seeks to enjoin Ohio from executing Smith and most other Ohio death row inmates under the current protocol, which was adopted October 7, 2016.  That protocol has already been the subject of extensive litigation, resulting in a preliminary injunction order enjoining its intended use in the executions of Ronald Phillips, Raymond Tibbetts, and Gary Otte.  *In re: Ohio Execution Protocol Litig (Phillips, Tibbetts, & Otte)*, 2017 U.S. Dist. LEXIS 11019 (S.D. Ohio Jan 26, 2017)(Merz, M.J.), presently pending on appeal to the Sixth Circuit.

A civil rights action under 28 U.S.C. § 1983 offers the capital litigant many advantages over a habeas corpus action.  Among other things, it is not subject to the second-or-successive limitation or the limits on discovery in habeas corpus.  Because it is forward looking instead of focused on what happened in the state courts, it is not limited in the introduction of evidence imposed in habeas by § 2254(d) as interpreted in *Cullen v. Pinholster,* 563 U.S. 170 (2011).

Even before the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-

132, 110 Stat. 1214)(the "AEDPA") vastly increased the procedural restrictions on habeas corpus, the Supreme Court held a district court could not grant release from confinement in a § 1983 action; to do so would frustrate the habeas exhaustion requirements. *Preiser v. Rodriquez*, 411 U.S. 475 (1973). (Notably, Justice Brennan, the major architect of expansion of habeas in the 1960's, dissented.) It was in *Nelson v. Campbell,* 541 U.S. 637 (2004), that the Supreme Court first held that a means or method of execution claim could be brought in a § 1983 case, over the objection of state officials who insisted that such a claim had to be brought in habeas corpus and would, in Nelson's case, have been subject to the second-or-successive requirement imposed by the AEDPA. The Court unanimously concluded that, because Nelson's challenge to the method of execution (there a vein cut-down procedure) did not challenge his actual death sentence, it could be brought in a § 1983 action.

*Cooey v. Taft*, Case No. 2:04-cv-1156, a § 1983 action which is the direct predecessor of Case No. 2:11-cv-1016, was filed December 8, 2014, and references an earlier filing in Case No. 2:04-cv-532 on June 10, 2004, less than a month after *Nelson* was decided. As consolidated in 2:11-cv-1016, *Cooey* remains pending. The same organizations of attorneys who provide representation to plaintiffs in 2:11-cv-1016 – the Capital Habeas Units of the Offices of the Federal Public Defender for the Southern and Northern Districts of Ohio and the Ohio Public Defender's Office – also represent most of the capital habeas corpus petitioners in this Court. Thus the litigation context provides maximal opportunities for coordination of strategy. To this Court's eye, those opportunities are never missed; if there are internal disagreements among the capital petitioners' bar, they are not apparent to this Court.

Petitioners' bar has had an apparent strategy for some years to have parallel habeas and § 1983 actions pending simultaneously on behalf of the same inmate. Implementation of this

strategy has been supported by the series of decisions of the Sixth Circuit in Stanley Adams'
habeas corpus case from the Northern District of Ohio, *Adams v. Bradshaw*, 644 F.3d 481, 483
(6th Cir. 2011); *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. March 15, 2016); and *Adams v.
Bradshaw*, 826 F.3d 306 (6th Cir. June 13, 2016), referred to herein as *Adams I, Adams II*, and
*Adams III* respectively.

In *Adams I* the circuit court held, over Ohio's objection, that a challenge to the method of
lethal injection could be brought in habeas corpus as well as in a § 1983 action. That is to say,
availability of the § 1983 cause of action did not logically imply the absence of a § 2254 cause of
action. Attempting to obey *Adams I*, this Court permitted amendments of habeas petitions to add
lethal injection claims and indeed treated those claims as newly arising whenever Ohio's lethal
injection protocol was amended. Then the Supreme Court appeared to call this Court's practice
into question with its decision in *Glossip v. Gross*, 135 S.Ct. 2726 (2015):

> Petitioners contend that the requirement to identify an alternative
> method of execution contravenes our pre-*Baze* [*v. Rees*, 533 U.S.
> 35 (2008)] decision in *Hill v. McDonough*, 547 U. S. 573, 126 S.
> Ct. 2096, 165 L. Ed. 2d 44 (2006), but they misread that decision.
> The portion of the opinion in *Hill* on which they rely concerned a
> question of civil procedure, not a substantive Eighth Amendment
> question. In *Hill*, the issue was whether a challenge to a method of
> execution must be brought by means of an application for a writ of
> habeas corpus or a civil action under §1983. *Id.*, at 576, 126 S. Ct.
> 2096, 165 L. Ed. 2d 44. We held that a method-of-execution claim
> must be brought under §1983 because such a claim does not attack
> the validity of the prisoner's conviction or death sentence. *Id.*, at
> 579-580, 126 S. Ct. 2096, 165 L. Ed. 2d 44.

135 S.Ct. at 2738 (2015). Changing course, this Court concluded the "must be brought"
language precluded what it had been doing under *Adams I*. Then, in *Adams II* as clarified by
*Adams III* , the Sixth Circuit decided *Glossip* did not implicitly overrule *Adams I*:

Adams challenged the constitutionality of lethal injection on direct appeal, asserting that "[d]eath by lethal injection constitutes cruel and unusual punishment and denies due process under the state and federal constitutions." The Ohio Supreme Court rejected this claim, explaining it had "previously rejected similar arguments." *Adams*, 817 N.E.2d at 56 (citing *State v. Carter*, 89 Ohio St. 3d 593, 2000 Ohio 172, 734 N.E.2d 345, 358 (Ohio 2000)). Adams again challenged the constitutionality of execution by lethal injection in his federal habeas corpus petition. The district court denied this claim, noting that "lethal injection is the law of the republic. No federal court has found the lethal injection protocol to be unconstitutional." *Adams*, 484 F. Supp. 2d at 796 (citation omitted).

As an initial matter, we note our recent holding that lethal injection does not violate the Constitution. See *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) ("Simply put, lethal injection does not violate the Constitution per se . . . ."). In *Scott*, a similar challenge to the implementation of lethal injection was raised, as a panel of this court observed that "Scott's petition alleges that lethal injection 'inflicts torturous, gratuitous and inhumane pain, suffering and anguish upon the person executed.'" *Id*. at 511. Accordingly, the Ohio Supreme Court's denial of Adams's challenge to the constitutionality of lethal injection as a means of execution did not constitute an unreasonable application of Supreme Court precedent.

The Supreme Court's decision in *Glossip* does not alter our precedent. *Glossip* concerned a 42 U.S.C. § 1983 action challenging Oklahoma's execution protocol. . . .

Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547 U.S. 573 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S. Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483, however, Adams's case is distinguishable from *Hill* because Adams argues that lethal injection cannot be administered in a constitutional manner, and his claim "could render his death sentence effectively invalid." *Cf. Hill*, 547 U.S. at 580. Our decision in *Adams* is consistent with the Supreme Court's reasoning in *Nelson*, which suggested that, under a statutory regime similar to Ohio's, "a constitutional challenge seeking to

permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." 541 U.S. at 644. Thus, to the extent that Adams challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas. *Adams*, 644 F.3d at 483. However, as the Supreme Court observed in *Glossip*, a challenge to a particular procedure that concedes the possibility of an acceptable alternative procedure is properly brought in a § 1983 action. *Glossip*, 135 S. Ct. at 2738.

*Adams v. Bradshaw*, 826 F.3d 306, 318-21 (6th Cir. 2016).


## II. Cognizability of Lethal Injection Claims in Both Habeas Corpus and Civil Rights (42 U.S.C. 1983): Present Law

As this Magistrate Judge understands it, the current state of the law in the Sixth Circuit after *Adams III* is that habeas corpus will lie to challenge "the constitutionality of lethal injection in general" in that "lethal injection cannot be administered in a constitutional manner, and [that] claim 'could render his death sentence effectively invalid.'" *Adams III*, quoting *Hill v. McDonough*, 547 U.S. at 580. Although the *Adams* court did not say so explicitly, it is obvious the same claim can also be made in a § 1983 action seeking permanent injunctive relief. Indeed Stanley Adams has done so in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016. Of course as a § 1983 plaintiff, a death row inmate must plead a constitutional alternative method of execution. *Glossip, supra*.

Smith's proposed amended petition would substitute four grounds for relief aimed at lethal injection in Ohio for the three grounds in the original Petition and the eleven grounds in the Amended Petition (ECF No. 50). Smith emphasizes the differences between relief in habeas and relief in the § 1983 case. Ohio's present death penalty law authorizes only execution by lethal injection. If Ohio can never constitutionally execute Smith by lethal injection, he argues

he would be entitled to a writ prohibiting his execution altogether, i.e. declaring his death sentence invalid. In contrast in § 1983 he can only obtain injunctive relief against particular specifics of the intended execution process and he must, per *Glossip*, plead an available constitutional alternative method of execution.

These differences appear to track the **substantive** distinction the Sixth Circuit recognized in *Adams III*[1] between a § 1983 lethal injection claim and one made in habeas corpus. However, pleadings that satisfy the substantive distinction do not, by that fact alone, satisfy the **procedural** distinctions between § 1983 and habeas.

## III. Smith's Petition, Amended Petition, and Instant Motion[2] Are Second-or-Successive Habeas Corpus Applications and Require Circuit Court Permission to Proceed

There is no dispute that this is Smith's second-in-time habeas corpus case. Such cases may not proceed in the district court without permission of the relevant circuit court if they are also second-or-successive. 28 U.S.C. § 2244(b). Indeed, district courts lack jurisdiction to deal with such cases without circuit court permission. *Franklin v. Jenkins*, 839 F.3d 465(6th Cir. 2016); *Burton v. Stewart*, 549 U.S. 147 (2007).

This state of the law strongly suggests much caution in deciding the second-or-successive question. If a district court finds a second-in-time petition is not second-or-successive, as capital habeas petitioners routinely argue, it may waste several years of judicial effort litigating a case over which it has no jurisdiction, for the second-or-successive question, being jurisdictional, will

---

[1] The Court notes that the Supreme Court denied certiorari in *Adams III*, thus foregoing an opportunity to clarify the implications of *Glossip*.

[2] In *Moreland v. Robinson,* 813 F.3d 315 (6th Cir. 2016), the Petitioner simultaneously filed a motion for relief from judgment and a motion for leave to amend once the judgment was reopened. The Sixth Circuit held that both "motions are second or successive habeas petitions that the district court lacked jurisdiction to consider. Rather than denying Moreland's motions, the district court should have transferred them to this court to review as requests for permission to be filed." 813 F.3d at 319.

remain open on appeal and a reversal for lack of jurisdiction will mean all that the district court has done is void for lack of jurisdiction. If, on the other hand, the district court finds the application is second-or-successive and transfers the case, the circuit court will either agree (and give permission to proceed or not) or disagree, in which case it will remand and deny the request for permission to proceed as unnecessary. *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), citing *Howard v. United States*, 533 F.3d 472 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017).

Whatever caution is exercised, however, the district court must decide the second-or-successive question in the first instance, as the Sixth Circuit previously held in this case. *In re: Kenneth Smith*, *supra*. Smith makes a number of arguments why the instant case is not second-or-successive, each of which is considered below.

**Newly-Arising Predicates.**

Smith asserts that numerically second habeas applications are not second-or-successive if they "assert claims with predicates that arose after the filing of the original petition." (ECF No. 100, PageID 2365, citing *In re Jones,* 652 F.3d 603 (6th Cir. 2010), *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998). It is correct that those three cases did find that particular second-in-time habeas applications were not second-or-successive based on predicates that arose after the first habeas procceding was completed – adoption of new parole rules with arguably *ex post facto* effect in *Jones* and later-arising incompetence to be executed claims in *Panetti* and *Stewart*.

Smith asserts the Sixth Circuit in *Adams III* adopted a general rule for allowing second-

in-time petitions to proceed without circuit authorization:  "*Adams III*  confirms Smith's argument that newly discovered facts related to a particular execution protocol (or any other newly arising factual predicates) make his second-in-time first petition not subject to § 2244(b)'s authorization requirement."  (ECF No. 100, PageID 2367).  This is simply not so.  There is no discussion whatever in *Adams III* of the second-or-successive question.  Indeed, there was no occasion to discuss that question since it was Stanley Adams' first habeas petition that was before the Sixth Circuit in that case.

As an example of newly arising predicates, Smith cites Ohio's adoption of a new lethal injection protocol on October 7, 2016 (ECF No. 100, PageID 2367).  Presumably that means Smith contends for the rule, as he has in the past in this case, that every time the protocol is amended, he (and others similarly situated) have a newly arising claim and can amend to assert that claim without satisfying the second-or-successive prerequisite.  Not only that, but such amendments make "Smith's prior claims newly ripe in accordance with the new protocol." *Id.*

Smith emphasizes that he is not claiming lethal injection executions are *per se* unconstitutional.  *Id.* at PageID 2368.  He is wise not to do so.  Aside from the fact that such claims are precluded by precedent (see *Adams III* , 826 F.3d at 318, citing *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014)), making that claim now when lethal injection has been the exclusive method of execution in Ohio since the time when his first petition was pending would be an abuse of the writ.

Smith notes that his petition "will also include the details of his health characteristics." *Id.*  Presuming development of some health characteristic since judgment in the first case which would make Smith's execution unconstitutional, this claim is analogous to those found not second-or-successive in *Panetti* and *Martinez-Villaereal*.  The proposed amended Petition,

10

however, does not relate Smith's health conditions to any Supreme Court precedent holding that execution of a person with such conditions will violate the Eighth Amendment.

Fundamentally, Smith fails to distinguish between newly arising claims and newly discovered evidence to support those claims. For example, Smith and his co-plaintiffs in *In re: Ohio Execution Protocol Litig.*, Case No. 2-11-cv-1016, and its predecessor, *Cooey v. Taft*, Case No. 2:04-cv-1156, have been arguing for some years[3] that Ohio's carrying out of its execution protocols violates the Equal Protection Clause. Yet that appears to be the substance of Smith's proposed new Third New Ground for Relief. In what sense is it newly arising if it has been pleaded and pending in the § 1983 case for years?

The Court does not doubt that newly arising claims and newly occurring or newly discovered evidence are perfectly proper in the § 1983 case. Actions for injunctive relief are always forward-looking. Habeas corpus, in contrast, has been a backward-looking remedy. See *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Adams III* contemplates that discovery conducted in parallel § 1983 proceedings may be used to supported a habeas corpus invalidity of sentence claim, implicitly recognizing an exception to *Pinholster*. But *Adams III* does not elide all the procedural differences between § 1983 and habeas corpus, as Petitioner seems to argue. In particular, although one can always bring a new § 1983 case to deal with new facts, a second-in-time petition must satisfy the second-or-successive prerequisite if it attacks the same judgment as the first habeas petition.

But, says Smith, my proposed amendments do not attack the original judgment. Because when I was sentenced the method of execution was electrocution unless a prisoner elected lethal injection, my judgment was "constructively amended" when Ohio made lethal injection the sole

---

[3] It would take a litigation archaeologist with skills (or perhaps just time) beyond those of the undersigned to discover where, in the thousands of filings (Mind you, thousands of filings, not just thousands of pages of filings), this claim was first made.

method of execution. My proposed amendments (and by implication the claims made in the Petition and Amended Petition) attack that "amended" judgment and thus are permitted under *Magwood v. Patterson*, 561 U.S. 320 (2010), and *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015).

One wonders how far Petitioner's counsel are prepared to carry this argument. Is its next iteration that capital judgments are constructively amended whenever the protocol is amended? In any event, there is no authority for adopting this approach. All of the amended judgments considered to take subsequent habeas petitions out of the second-or-successive category have been real ink-on-paper state court judgments.

**Abuse of the Writ**

Before enactment of the AEDPA, a prisoner could bring repeated habeas corpus actions attacking the same state court judgment. Rule 9(b) of the Rules Governing Section 2254 Cases formerly provided:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

The Sixth Circuit has explained the relationship between abuse of the writ doctrine and the second-or-successive prerequisite in *In re Bowen*, 436 F.3d 699 (2006)(Cole, J.):

> The Supreme Court has made clear that not every numerically second petition is "second or successive" for purposes of AEDPA. *Slack v. McDaniel*, 529 U.S. 473, 487, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (a petition filed after a mixed petition has been

dismissed before the district court has adjudicated any claim is not a second or successive petition); *Martinez-Villareal v. Stewart*, 523 U.S. 637, 118 S. Ct. 1618, 140 L. Ed. 2d 849 (1998) (a numerically second petition alleging a claim that was contained in a first petition, but dismissed as unripe, is not second or successive); see also *Carlson v. Pitcher*, 137 F.3d 416, 419 (6th Cir. 1998) (same). Although § 2244(b) specifies the treatment of second or successive petitions, courts defining "second or successive" generally apply abuse of the writ decisions, including those decisions that predated AEDPA. *Martinez-Villereal*, 529 U.S. at 643-45 (considering "abuse of the writ" cases in determining whether petitioner's *Ford* claim is second or successive); see also *Singleton v. Norris,* 319 F.3d 1018, 1023 (8th Cir. 2003); *Esposito v. United States,* 135 F.3d 111, 113 (2d Cir. 1997) (per curiam); *Pratt v. United States,* 129 F.3d 54, 60 (1st Cir. 1997), cert. denied, 523 U.S. 1123, 140 L. Ed. 2d 945, 118 S. Ct. 1807 (1998); *Reeves v. Little*, 120 F.3d 1136, 1138 (10th Cir. 1997) (per curiam). In *Sanders v. United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1948), the Supreme Court explained abuse of the writ:

> [I]f a prisoner deliberately withholds one or two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. … Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

> *Id*. at 18, 83 S.Ct. 1068. Under the abuse of the writ doctrine, a numerically second petition is "second" when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect. *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Id.* at 704.

Smith's lethal injection invalidity claims all became available to him at the latest when Ohio adopted lethal injection as its sole method of execution in 2001 when his original Petition was pending. Thus withholding them from that case was an abuse of the writ, particularly since

parallel claims were filed in *In re: Ohio Injection Protocol Litig.* At the very least, he has failed

to show how the undoubted change of facts since 2001 has made these claims "newly arising"

instead of just supported by new evidence. To the extent the Sixth Circuit in *Adams I*, *Adams II*,

and *Adams III* has elided the substantive differences between habeas and civil rights attacks on

lethal injection protocols, they have not eliminated the procedural differences.

**Statute of Limitations**

Smith extends his newly arising claims/evidence theory to explain why his proposed

amendments are not barred by the statute of limitations (ECF No. 100, PageID 2373-82). If the

Court were considering a motion to amend on the merits, it could decide whether amendment

would or would not be futile because of a limitations bar. However, because the Petition,

Amended Petition, and Renewed Motion to Amend are all second-or-successive habeas corpus

applications, this Court lacks jurisdiction to decide that issue at this point in time.

**Conclusion**

This case is a second-or-successive habeas corpus attack on the same judgment and

sentence of death collaterally attacked in Smith's prior habeas case. It thus may not proceed

without permission of the circuit court under 28 U.S.C. § 2244(b).

This case is therefore ordered TRANSFERRED to the United States Court of Appeals for

the Sixth Circuit for determination of whether or not it may proceed. The effective date of this

Order is POSTPONED until District Judge Rose decides any appeal from this Order.

April 3, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge